RECEIVED

JUN 2 8 2018

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| DAVID R. DAIGLE, et al | CIV. ACTION NO. 2:17-01523 |
|---|---|
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CIMAREX ENERGY CO, ET AL | MAG. JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion of Cimarex Energy Co. to Dismiss Complaint" which the court converted[1] to a Motion for Summary Judgment (R. #13) wherein Defendant, Cimarex Energy Co. ("Cimarex") moved to dismiss Plaintiffs' suit against it for lack of subject matter jurisdiction because Cimarex is not presently "in violation" of the Clean Water Act ("CWA").[2] In that motion, Cimarex also seeks to dismiss the instant suit because Plaintiffs have failed to state a claim upon which relief can be granted under the CWA, the Louisiana Environmental Quality Act ("LEQA"), the Louisiana Tree Piracy Statutes and other state-law based claims sought in the Complaint.

## FACTUAL STATEMENT

Plaintiffs, David R. Daigle and Mary Ann Daigle, own the surface of approximately 115 acres of property in Allen Parish.[3] Defendants, Cimarex and Drive Energy, Inc. have conducted, directed, and participated in oil and gas exploration and production activities as lessees, and assignees in the Bunch Creek Oil and Gas Field on the Daigles' property.[4] The Defendants' activities include the construction and operation of oil and gas facilities,

---

[1] See Electronic Order #24 issued March 14, 2018.
[2] 33 U.S.C. § 1365(a)(1).
[3] R. #1, ¶ 15, Plaintiff's Statement of Material Fact ("SOF") ¶ 2.
[4] Id. ¶ 16, SOF ¶ 3.

including but not limited to, wells, pits, sumps, pipelines, flowlines, tank batteries, heater treaters, wellheads and measuring facilities.[5]

The land that is involved in this lawsuit is a 40-acre tract previously owned by Tyrrell L. Garth.[6] On October 5, 2000, mineral lessor, Tyrrell L. Garth, entered into a 115-acre mineral lease (the "Garth Lease") with lessee Kash Oil & Gas, Inc. ("Kash") which included the above-mentioned 40-acre tract.[7]  On December 18, 2000, Mr. Garth sold and conveyed all rights to the 40 acres at issue to Plaintiffs, however, he retained all of the mineral and royalty interests.[8] The T.L. Garth #1 Well (the "Garth Well") was previously operated by Cimarex' predecessor-by-merger, Helmerich & Payne ("H&P") and by Cimarex at all times from March 23, 2001 through the sale by Cimarex of all of its interest in the Garth Well effective as of May 1, 2010.[9]

On December 22, 2000, Kash assigned a 50% interest in the 2000 Oil and Gas lease to H&P.[10] On February 1, 2001, H&P entered into a Joint Operating agreement ("2001 Joint Operating Agreement").[11] The Daigles still own and use the 40-acre tract, plus an additional 90 acres of longleaf pine savannah ecosystem restoration property.[12]

In 2001, H&P built a road and an earthen fluid pit on the property.[13] On February 23, 2001, H&P, as operator, obtained a permit to drill the Garth Well on the Garth Lease,[14] and in March H&P drilled the Garth Well.  The Garth Well "reserve pit" was constructed

---

[5] Id.
[6] Id. ¶ 17.
[7] Id. ¶ 18.
[8] Id. ¶ 20.
[9] R. #2, exhibit 7, ¶ 1; exhibit 1.
[10] Id. ¶ 21, Plaintiffs' exhibits 4, 6 and 7 attached to Complaint, R. #1.
[11] Id. Plaintiffs' exhibit 8.
[12] Plaintiff's exhibit 5, Cash Sale Deed.
[13] Id. Plaintiffs exhibit 2 of exhibit 7.
[14] Plaintiff's exhibit 10, Permit to Drill.

by Davies Construction[15] but the pit was not lined with an impervious synthetic liner to prevent horizontal and vertical subsurface migration and seepage and to protect groundwater as required by the Louisiana Department of Natural Resources regulations.[16] The purpose of the reserve pit was to treat and store liquid wastes associated with the Garth Well.[17]

At the time the Garth Well was drilled, H&P was aware that the usable groundwater aquifer in that region was 60' below the surface and could be threatened by the use of the unlined reserve pits, spills and/or failure to timely and completely restore the spill area.[18] H&P applied for a permit to dispose of the Garth Well Drilling wastes into the annulus of the well, but it was denied because the well had insufficient surface casing to isolate the underground source drinking water there.[19]

On May 10, 2001, after the Garth Well was drilled, H&P hired a contractor to back fill the reserve pit and clean up the Garth Well location;[20] Plaintiffs allege this procedure was in violation of Louisiana Department of Natural Resources regulations.[21]

On January 7, 2002, U.S. Fish and Wildlife Service confirmed via a letter to H&P environmental consultant, Tim Morton, that the Daigles' property and surrounding areas are a suitable habitat for the endangered red cockaded woodpecker.[22]

Subsequent to the closure of the earthen reserve pit at the Garth Well, no other pits were used in connection with Cimarex' operations at the Garth Well.

---

[15] H&P contracted with Davies Construction.
[16] Id. Plaintiffs' exhibit 7.
[17] Id.
[18] Id. Plaintiffs' exhibit 9, Water Well Registrations.
[19] Plaintiffs' exhibits 11 and 12.
[20] Id. Plaintiffs' exhibit 7.
[21] Id.
[22] Plaintiffs' exhibit 16, U.S. Dept. of Interior Correspondence.

Recompletion/workover operations at the Garth Well in July 2002, April 2003, December 2003, and July 2004 used the tanks of workover rigs; the July 2004 recompletion work utilized above-ground steel containers for produced water and completion fluids.[23]

On July 12, 2002, H&P entered a "Contract of Release" ("2002 Release") with the Daigles.[24]  The 2002 Release provides, in part, that "[w]hen the well is plugged and abandoned, lease road and gravel pad will be restored, within 6 months, as near as possible to original condition.  Upon closure, soil parameters will meet L.D.N.R. 29-B criteria and/or criteria provided by governmental bodies having jurisdiction over the covered lands or operations."[25]

On November 13, 2002, effective October 21, 2002, Cimarex succeeded H&P as operator of the Garth Well.[26]

On July 29, 2004, the Garth Well was recompleted; on that same day Plaintiffs allege that an oilfield work truck overturned about 100 yards from the Garth Well and created a spill which allegedly caused a 1.8 acre dead tree area on the Daigles' property (hereinafter referred to as the "Dead Tree Area"). Plaintiffs allege that the truck was an agent of H&P; during this recompletion, 211 bbls of 9.6 ppg saltwater was "swabbed", *i.e.* circulated out from the Garth Well which had to be hauled off location.[27] Plaintiffs assert that this is the likely source of contamination found at the Dead Tree Area; Plaintiffs also assert that they were unaware of the damage to the trees until sometime after January 1, 2006.

---

[23] R. #2, exhibit 7, pp 9-11.
[24] Id. Plaintiffs' exhibit 20.
[25] Plaintiffs' exhibit 20, Contract of Release.
[26] Id. Plaintiffs' exhibit 21.
[27] Plaintiffs' exhibit 24, Activity Log.

Sometime after July 1, 2005, Mr. Daigle observed an area on the 40-acre tract which caused him to investigate further.[28] Mr. Daigle hired Austin Arabie, an environmental consultant, to inspect and collect soil samples.[29] Shortly thereafter, Mr. Daigle learned from his neighbor, Jesse Ardoin, of an overturned vacuum truck at the 1.8 acre Dead Tree Area.[30] On August 5, 2005, Mr. Arabie inspected the property and collected soil samples for lab analysis with follow-up sampling performed on October 7, 2005. The results from Mr. Arabie's inspection and lab results revealed a high concentration of calcium; the December 22, 2005, report indicated that the "contaminant of concern inhibiting the vegetative growth contains calcium and chloride."[31] Mr. Arabie concluded that "it is evident that a spill of material containing calcium and chloride and possibly other contaminants has occurred on the property."[32] The report also noted that "[m]ost" longleaf pines in the impacted area are dead, and the remaining ones appear severely stressed or dying."[33]

Mr. Daigle met with Cimarex representative/Production Manager, Rick White, on April 19, 2006, to inspect the spill site area. Mr. Daigle showed Mr. White the ruts where the truck had left the road on the west side as well as the ruts on the east side where the recovery truck made ruts removing the ditched truck.[34] On May 5, 2006, Mr. White wrote Mr.Daigle that "Cimarex will pay to remediate the damaged area, including timber, damage, if such damage is reasonably determined to have been caused by our operations with respect to the wells or 'ponding' from our lease road." Cimarex proposed

---

[28] Id. ¶ 48.
[29] Id. ¶ 48 and 49.
[30] Id. ¶ 49.
[31] Plaintiffs' exhibit 29, p.1.
[32] Id.
[33] Id., p. 2.
[34] SOF, ¶ 39.

to conduct additional soil sampling at its expense, but did not admit knowledge of, or responsibility for, the completion fluid spill.[35]

On May 8, 2006, Cimarex hired Coastal Chemical to analyze the produced water from the Garth Well and nearby Kingery Estates Well. The analyses showed the presence of barium, sodium, calcium and chlorides which had also been reported in the soil and groundwater samples taken at the Garth Well and other locations on the Daigles' property.[36] On July 19, 2006, Cimarex environmental consultant CK Associates performed sampling at the Dead Tree Area and confirmed levels of calcium magnesium, and chlorides in excess of background.[37]

Plaintiffs' expert, Mr. Arabie, performed certain tests in April 2008 at a location believed to be a former reserve pit site at the Garth Well. In September 25, 2008, Arabie Environmental Solutions issued a second report evaluating all test results performed to date; the report identified environmental damage to soil from LDR Statewide Order 29-B SAR and EC parameter soil exceedances in the area of the former and now closed Garth Well reserve pit. [38] The Report further identified environmental damage to groundwater at three sample locations and at the 1.8 acre Dead Tree spill site, 100 yards north of the Garth Well and 100 yards south of the Garth Well.[39]

The Oil, Gas and Mineral Lease covering Cimarex' oil and gas operations at the Garth Well (the "Garth Lease") expired in February 2009.[40] Effective May 1, 2010, Cimarex sold all of its right, title and interest in the Garth Well to Kash and Tenexco.[41]

---

[35] Plaintiffs' exhibit 30, Correspondence. SOF, ¶ 40.
[36] SOF, ¶ 41, Plaintiffs' exhibits 31 and 32.
[37] SOF, ¶ 43, Plaintiffs' exhibit 34.
[38] SOF, ¶ 46, Plaintiffs' exhibits 26 and 27.
[39] Id.
[40] R. #2, ¶ 65.
[41] See Assignment and Bill of Sale, R. #2, ¶ 66, Cimarex exhibit 7 and exhibit 1 attached thereto.

On January 9, 2015, Mr. Garth assigned to Plaintiffs any environmental damage related litigation rights he may have not earlier conveyed (hereinafter referred to as the 2015 Assignments of Rights").[42] On May 1, 2015, Drive Energy, Inc. began to operate and continues to operate the Garth Well and related facilities.[43]

*The State court lawsuit*

On June 1, 2006, Plaintiffs sued in state court to force a cleanup of the property; Plaintiffs sued Cimarex, H&P, and Kash, as present and/or former operators of the Garth Well and Moncla Well Services, Inc., the drilling contractor on Cimarex' July 2004 recompletion of the Garth Well.[44] Plaintiffs alleged that Moncla "spilled completion chemicals" on the Daigles' property during the recompletion which resulted in dead or dying trees.[45]

On January 10, 2010, after Moncla was dismissed by Plaintiffs, Plaintiffs filed a First Amending and Supplemental Petition for Damages adding Calcasieu Rentals, Inc. ("CRI") as a defendant asserting the same claims they had against Moncla. In 2011, CRI filed a motion for summary judgment alleging that while it supplied saltwater disposal and vacuum trucks for the July 2004 Garth Well recompletion, none of its trucks spilled anything during the recompletion. On January 30, 2012, the court granted CRI's motion and dismissed CRI; Plaintiffs did not appeal the ruling. The only entity that supplied vacuum trucks during the July 2004 recompletion of the Garth Well was CRI.[46]

---

[42] Plaintiffs' exhibit 39, Assignment.
[43] Plaintiffs' exhibit 13. DNR Well Information.
[44] David Daigle and Mary Ann Daigle v. Cimarex Energy Co, Helmerich & Payne, Inc. and KASH Oil & Gas, Inc. Civ. Action 2006-270, (33rd Judicial District court) (hereinafter referred to as the "Allen Parish Lawsuit").
[45] Cimarex exhibit A-1 at ¶ ¶ 7 and 9, attached to David Culpepper Declaration, ¶ 3.R. # 25-2. MR. Culpepper was lead counsel of record for Cimarex in the Allen Parish Lawsuit.
[46] Id. at ¶ 5; Cimarex exhibit A-10.

In March 2012, Plaintiffs filed their Second Amended and Supplemental Petition for Damages and asserted claims against Cimarex based upon the Arabie September 2008 Report. Plaintiffs filed their Third Amending and Supplemental Petition for Damages on April 1, 2015, asserting claims against Cimarex based upon an alleged April 29, 2002 spill at the Garth Well; Plaintiffs also asserted claims against Cimarex based upon the "Garth Well Area" contamination.

On August 17, 2016, Plaintiffs provided a letter to Cimarex as notice of their intent to sue Cimarex under the citizen's suit provisions of the Louisiana Environmental Quality Act ("LEQA"). Also in August 2016, Plaintiffs attempted to fax-file their Fourth Amending and Supplemental Petition ("Fourth Petition") to assert their claims under LEQA against Cimerax.[47] The Allen Parish Judge dismissed Plaintiffs' Fourth Petition because Plaintiffs failed to meet their burden of proving that the Fourth Petition was properly fax-filed.[48]

Plaintiffs allege that the environmental damage at the Garth Well area is the result of (1) the improper construction and closure of the reserve pit: (2) reported and non-reported known spills; (3) contamination events that may have occurred at any or all of the five recompletion workovers[49] and; (4) other oilfield activities of the Defendants unknown to the Daigles after diligent research and discovery performed to date.[50]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue

---

[47] R. #23, exhibit 1; Culpepper decl. ¶ 6.
[48] R. #23, exhibit 2, Culpepper decl. ¶ ¶ 6 and 7, and exhibit A-11, p. 18.
[49] Complaint. Plaintiffs' exhibit 3.
[50] Id. Plaintiffs' exhibits 7B, D, 26 and 27.

as to any material fact and that the moving party is entitled to judgment as a matter of law.[51] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[52] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[53] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[54] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[55] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[56] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[57] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[58] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[59]

---

[51] Fed. R. Civ. P. 56(c).
[52] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[53] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[54] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[55] Anderson, 477 U.S. at 249.
[56] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[57] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[58] Anderson, 477 U.S. at 249-50.
[59] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

## LAW AND ANALYSIS

Cimarex asserts that (1) this court lacks subject matter jurisdiction over Plaintiffs' claims, (2) Plaintiffs fail to state a claim against it upon which relief can be granted under the CWA, (3) the Plaintiffs' claims under the CWA, LEQA, Tree Piracy Statues and Post-2006 Tort claims are time barred, (4) Plaintiffs can assert no claims under the Garth Lease, (5) Plaintiffs' claims under the "2002 Surface Use Agreement" are premature, (6) Plaintiffs have no claim for unjust enrichment i.e., recovery of civil fruits, and (7) collateral estoppel as to Plaintiffs' Dead Tree Area claim.

*Subject matter jurisdiction*

Cimarex maintains that the Plaintiffs' suit under the CWA should be dismissed for lack of subject matter jurisdiction because: (1) the alleged misdeeds of Cimarex during its operation for the Garth Well constitute wholly past supposed violations of the CWA which are outside the jurisdictional grant of the citizen's suit portion of that Act; and (2) the Complaint, as amended, alleges only the residual effect of supposed past discharges which are legally insufficient to give rise to jurisdiction under the CWA. Defendant further asserts that the undisputed facts alleged preclude the Daigles from alleging the jurisdictional prerequisite of a continuous or intermittent violation of the CWA.

Cimarex maintains that a past violation, or the residual effects thereof cannot support a CWA citizen's suit. Cimarex remarks that Plaintiffs' Complaint, as amended, only alleges discrete instances of claimed discharges which supposedly occurred at or near the Garth Well in May, 2001, April 29, 2002 and July 2004. Thus, Plaintiffs' suit is in essence, based on the residual and possibly, continuing effects of long-past

discharges; thus, there can be no subject matter jurisdiction under the relevant jurisprudence.

Cimarex relies on several cases including Hamker v. Diamond Shamrock Chemical Co.,[60] wherein the plaintiffs sued under the CWA over a leak in an oil pipeline. The leak was a one-time event that lasted about two weeks. The district court dismissed the suit for lack of subject matter jurisdiction and the Fifth Circuit affirmed holding that (1) § 505(a)'s language allows for prospective relief only; and (2) the statute does not permit citizens' suits for past violations, only current ongoing violations as of the filing of the suit. In other words, the statute does not reach wholly past discharges. The Fifth Circuit further concluded that allegations of residual, or continuing effects from a concluded discharge do not support a citizens' suit under § 505(a).

In Gwaltney of Smithfield v. Chesapeake Bay Found.,[61] the Supreme Court agreed that § 505(a) authorized only prospective relief and did not confer jurisdiction over wholly past violations. Instead, § 505(a)'s requirement that a defendant "be in violation" "is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."[62] Cimarex also cites numerous other cases which hold that absent a continuing violation, there cannot be a citizen's suit under the CWA.[63]

---

[60] 756 F.2d 392 (5th Cir. 1985).
[61] 484 U.S. 49, 108 S.Ct. 376 (1987).
[62] 108 S.Ct. at 381.
[63] Auspro Enterprises, LP v. City of Austin, 2015 U.S. Dist. LEXIS 147862 at *5, n. 3; E.R.C. 2026 )(.D. Tex. 10/30/15); Friends of the Earth, Inc. v. Gaston Copper Recycling, 629 F.3d 387, 402-03 (4th Cir. 2011); Conn. Coastal Fishermen's Assn. v. Remington Arms, Co., 989 F.2d 1305, 1312-13 (2nd Cir. 1993); United States v. Rutherford Oil Corp., 756 F.Supp.2d 782, 791 (S.D.Tex. 2010); Nt'l Parks & Conservation Ass'n. v. TVA, 502 F.3d 1316, 1322 (11th Cir. 2007); United States v. Scruggs, 69 E.R.C. 1628 (S.D. Tx. 2009); Jones v. E.R. Snell Contractor, Inc., 333 F.Supp. 2d 1344, 1348 (N.D. Ga. 2004); Aielo v. Town of Brookhaven, 136 F.Supp.2d 81, 120-21 (E.D. N.Y. 2001); Wilson v. Amoco Corp., 32

Plaintiffs maintain that their CWA claims of residual contamination remain viable because they meet both prongs under Gwaltney. Gwaltney establishes two ways a plaintiff can demonstrate a violation through defendant's intermittent violations: "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."[64]

Plaintiffs argue that the CWA claims relate back to the original petition filed in state court on June 1, 2006 and there were ongoing violations of the CWA after the petition was filed. Plaintiffs also remark that recent photos of oilfield waste leaking beyond the protective "berm" and related sampling report shows that the leaks continue to this day.[65]

Plaintiffs then assert that even if the first prong fails, the CWA claim will survive because the Daigles satisfy the "continuing violation" requirement – whether "a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." Plaintiffs again refer the court to recent photos and environmental sampling at the site to show the likelihood of recurrence in "intermittent" and "sporadic" violations.[66] Plaintiffs concede that it is the current operator who is causing the most recent leaks, but then asserts that Cimarex is solidarily liable because contamination is commingled with multiple defendants.[67]

---

F.Supp.2d 969, 975 (D.Wyo. 1998); Friends of Santa Fe Cty. v. LAC Minerals, Inc., 892 F.Supp. 1333, 1354 (D.N.M. 1995).
[64] See Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd. 890 F.2d 690. 693 (4 th Cir. 1989); see also Carr v. Alta Verde Ind., Inc., 931 F.2d 1055, 1061 (5th Cir. 1991)(adopting the Gwaltney test).
[65] Photos attached to Complaint, R. #1-41 and 1-43.
[66] Id.
[67] Citing Phillips Petr. Co. v. Hardee, 189 F.2d 205, 212 (5th Cir. 1951); Thompson v. Johns-Manville Sales Corp., 714 F.2d 582 (5th Cir. 1983).

Cimarex argues that in order to "be in violation" of the CWA, the citizen-plaintiff must allege a state of either continuous or intermittent violation – that is, a reasonable likelihood that a past polluter will continue to pollute in the future.[68] Cimarex argues that Plaintiffs' allegation that Cimarex continues to violate is conclusory and unspecified which necessarily fails in light of the Complaint's specific assertions of only three, wholly past, supposed violations of the CWA by Cimarex. The court finds that it is very significant that the Complaint expressly acknowledges that Cimarex ceased all operations at the Garth Well in 2009 and has not done anything at the Garth Well at any time since. Also, Cimarex sold all of its interest in the Garth Well effective May 2010.

Plaintiffs next argue that even though Cimarex is a prior operator, case law establishes that former operators are viable defendants. Plaintiffs rely on PennEnvironment v. PPG, Indus., Inc.,[69] wherein the district court refused to dismiss the defendants because they had sufficient control to address contaminated discharges and to remediate the site. Plaintiffs suggest that in the instant suit, Cimarex has control to address contaminated discharges and perform a proper remediation.

In Brossman Sales, Inc. v. Broderick,[70] Plaintiffs who were purchasers of a mobile home park sued certain vendors under the CWA for allegedly depositing construction debris on areas designated as wetlands. Relying on Gwaltney, the district court dismissed defendants reasoning that "[s]ince the defendants in this case have relinquished

---

[68] Gwaltney, 108 S.Ct. at 381.
[69] 964 F.Supp. 2d 429 (W.D. Pa. 2013).
[70] 808 F.Supp. 1209 (E.D. Pa. 1992).

ownership of the source of the alleged violation and no longer have the control to abate it, the statute is likewise inapplicable to them."[71]

In Friends of the Sakonnet v. Dutra,[72] suit was brought against former owners of a failed private septic system which leaked sewerage into the Sakonnet River without the appropriate permit. Defendants argued under Gwaltney that there could be no liability imposed "because any violation for which they are responsible is in the past."[73] In dismissing the CWA claims against the former owners, the district court held that the question is "whether a person who has violated the Clean Water Act may avoid liability by relinquishing ownership of the polluting source although the violation continues.... The phrase "any person . . . who is alleged to be in violation" is clearly directed to a present violation by the person against whom the action is brought."[74] Because the former owners were not presently violating the Act, they were dismissed.

Plaintiffs rely on Beartooth Alliance v. Crown Butte Mines,[75] and further asserts that "a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations."[76] In Beartooth, the court denied defendants' motion for summary judgment finding that there was evidence that the defendants exercised some amount of control over the site at periods after the suit was filed.

---

[71] Gwaltney, 808 F.Supp. at 1214.
[72] 738 F.Supp. 623 (D.R.I. 1990).
[73] 738 F.Supp. at 632.
[74] 738 F.Supp. at 632-33.
[75] 904 F.Supp 1168, 1176 (D. Mont. 1995) (citing Carr v. Alta Verde Indus, Inc., 931 F.2d 1055, 1065 at n. 12 (5th Cir. 1991) that "proof of an actual violation subsequent to the complaint is conclusive" as to the issue of ongoing violations); see also Chesapeake Bay Found. v. Gwaltney, 890 F.2d 690, 696 (4th Cir. 1989)(penalty factor kept case alive even though defendant was no longer in violation).
[76] Plaintiffs' opposition, p. 11, R. #22.

As noted by Cimarex, Plaintiffs bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence. There is no reasonable likelihood that a past polluter such as Cimarex will continue to pollute in the future. Thus, the court finds that the CWA is inapplicable to impose liability upon Cimarex and will dismiss Plaintiff's claims under the CWA.

*Prescription under the CWA, LEQA, Tree Piracy Statutes and Post-2006 Tort Claims*[77]

Cimarex maintains that Plaintiffs' claims under the CWA, the LEQA, the Tree Piracy statutes and post-2006 tort claims in the instant action are time-barred. Plaintiffs allege that Cimarex violated the CWA with respect to the reserve pit utilized in the 2001 initial completion of the Garth Well, in April 2002 due to a leak, and in July 2004 when a vacuum truck allegedly overturned and spilled completion fluids. Cimarex maintains that as to timeliness, the suit is governed by 28 U.S.C. § 2462[78] which provides that the suit will prescribe five (5) years from the date the claim first accrued. Because the last alleged spill and/or leak occurred in July 2004, and the instant suit was filed November 20, 2017, Cimarex maintains that Plaintiffs' claims are clearly prescribed.

Plaintiffs, on the other hand, argue that the prescriptive periods were interrupted and thus have not prescribed. Plaintiffs further assert that the five year prescriptive period

---

[77] Any tort claims asserted by Plaintiffs subsequent to 2006; Plaintiffs' tort claims asserted in their second and third petitions in the Allen Parish lawsuit for (1) contamination arising out of the .4 acre former reserve pit site, (2) the April 29, 2002 purported spill at the Garth Well, and (3) negligence, trespass and nuisance claims, and claims under La. Civ. Code art. 667 and Mineral Code arts. 11, 22, and 122.

[78] 28 U.S.C. § 2462 Time for commencing proceedings

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

relied upon by Cimarex does not apply to the CWA and LEQA. Plaintiffs also assert that Cimarex does not argue that the pre-2006 tort and contract claims are prescribed, and therefore these claims should not be dismissed.

Plaintiffs argue that the state court suit filed on June 1, 2006, interrupted prescription and that prescription runs anew from the date of dismissal without prejudice on January 25, 2017.[79] Plaintiffs remark that the state court suit was involuntarily dismissed without prejudice. Plaintiffs maintain that because the instant suit was filed January 10, 2018 all of the Plaintiffs' claims—in tort, contract, Tree Piracy, CWA and LEQA—are timely.

Plaintiffs further assert that because there is a continuing violation, the CWA claims are not expired because Plaintiffs are seeking injunctive relief under section 505(a) which authorizes private citizens to commence a civil action for injunctive relief.[80] Plaintiffs also assert that because they alleged in their Complaint, a continuing violation, the CWA claims are not barred by a statute of limitations. Plaintiffs further assert that because they are not seeking a civil fine, penalty, or forfeiture, pecuniary or otherwise under the CWA,

---

[79]La. Civ. Code art. 3462 (and Comment (b)); La. Civ. Code art. 3463 (and Comments (b) and (f)); La. Civ. Code art. 3466.

[80] United States v. Hobbs, 736 F. Supp. 1406, 1410 (E.D. Va. 1990)("The limitations period set forth in 28 U.S.C. § 2462 applies only to suits for civil penalties. This section, by its own terms, has no bearing on suits in equity." Plaintiff in this case seeks both penalties pursuant to 33 U.S.C. § 1319(d) and injunctive relief pursuant to 33 U.S.C. § 1319(b). While this court finds that 28 U.S.C. § 2462 applies to enforcement actions under the CWA, that holding does not govern this court's actions with respect to the equitable relief sought by plaintiff."); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 584 (1946)("Traditionally ... statutes of limitation are not controlling measures of equitable relief."(North Carolina Wildlife Federation v. Woodbury, 1989 WL 106517, *3-4 (E.D.N.C. Apr. 25, 1989)(the five-year limitations period in Section 2462 does not apply to Clean Water Act suit for injunctive relief); Paper, Allied-Indus., Chem & Energy Workers Int'l Union, 2005 WL 1389431, at *17 (W.D. Okla. June 10, 2005) (same).

but only injunctive relief, the five-year limitations period under Section 2462 does not apply.

Cimarex argues that because the state court filed petition did not assert claims under the CWA, there is no interruption of prescription as to that claim. As to the LEQA claim, Cimarex informs the court that in August 2016, Plaintiffs filed their Fourth Supplemental and Amending Petition in the Allen Parish lawsuit and alleged claims under LEQA. On December 15, 2016, the supplemental and amending petition was dismissed because the Plaintiffs failed to prove that the petition was properly fax-filed, thus it had no legal force or effect (Louisiana Revised Statute 13:850.C) and thus could not interrupt prescription.

Plaintiffs rely on <u>Jackson Court Condominiums, Inc. v. City of New Orleans</u>,[81] which held that a plaintiff's prior state court suit interrupted the running of prescription as to plaintiff's subsequent suit in federal court under 42 U.S.C. § 1983 where both suits were based on the same operative facts. However, Cimarex argues that because Plaintiffs could not have asserted a CWA claim in the state court, since federal courts have exclusive jurisdiction over CWA suits, Plaintiffs' reliance on the <u>Jackson Court</u> case is misplaced.

In <u>Ford v. Stone</u>,[82] the court held that because the state court petition did not assert any federal claims, then neither plaintiff's petition nor his state court presentations was sufficient to interrupt prescription. In <u>Ford</u>, the plaintiff argued that his filing of a lawsuit in state court arising out of the same basic facts as the suit filed in federal court

---

[81] 665 F.Supp. 1235, 1240 (E.D. La. 1987).
[82] 599 F.Supp. 693 (M.D. La. 1984).

interrupted prescription. The court reasoned that not only was there a different defendant in the state lawsuit, but also the federal complaint specifically asserted federal claims, as well as state law claims. However, plaintiff chose to pursue state law claims in the state lawsuit even though he orally made a reservation of federal claims in the state court trial. The court concluded that defendants received no formal notice of the federal claims until well after the passage of the one-year prescriptive period noting that

> [t]he fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely and to protect him from stale claims and from loss or non-preservation of relevant proof. They are designed to protect him against lack of notification of a formal claim within the prescriptive period. . .[83]

Also noted by Cimarex is the undisputed fact that there are mandatory pre-suit notice requirements under the CWA and LEQA which Plaintiffs failed to meet. Both the CWA[84] and the LEQA[85] prohibit the commencement of a citizen's suit under these Acts until the plaintiff has provided written notice of intent to sue and the statutory waiting periods (60 days under the CWA and 30 days as to LEQA) have expired after the prospective defendant's receipt of the written notice. Said notice requirements are a mandatory condition precedent to commencing suit. It is undisputed that Plaintiffs provided these pre-suit notices on August 15, 2017, thus even if they had been properly asserted in the state court suit (the CWA was not asserted, nor could it have been asserted, and the LEQA was not legally filed because of failure to follow proper procedure), the prerequisite notice requirements were not met.

---

[83] Citing Norris v. Bell Helicopter-Textron, Inc.,712 F.2d 171, 173 (5th Cir. 1983).
[84] § 1365(b)(1)(A).
[85] La. R.S. 30:2026.B.(1).

Plaintiffs inform the court that they are not seeking civil fines, penalties or forfeiture under the CWA. Because Cimarex argued this point so fervently, we could only infer that the complaint must have been interpreted by Cimarex to assert these particular claims. Thus, out of an abundance of caution we choose to address the prescription issue.

To the extent that the complaint asserts claims for civil penalties, fines and forfeitures under the CWA, the court finds that Plaintiffs' state court petition, as amended, which expressly stated that it did not assert any federal claims,[86] did not interrupt prescription as to Plaintiffs' CWA claim in this lawsuit and these claims are prescribed. With regard to Plaintiffs' claims for injunctive relief under the CWA, even though they would not be prescribed, due to conclusions hereinabove, that the CWA is not applicable, all claims pursuant to the CWA will be dismissed.

Plaintiffs maintain that the claims brought pursuant to the LEQA are imprescriptible based on the holding in Salvation Army v. Union Pac. R.R., Inc.[87] Cimarex requests that the court reject the holding in Salvation Army which held that the one year prescriptive period for private tort claims did not apply to a suit by private plaintiffs under the LEQA. The court in Salvation Army reasoned that suits for LEQA claims pertain to fundamentally-different law matter; the court's best Erie guess was that the one-year prescriptive period for tort actions was inapplicable.[88] The court noted that claims under LEQA are less like a private tort and more like a public law claim. The court recognized that one Louisiana appellate court analogized the citizen suit cause of action under LEQA to a tort cause of

---

[86] See Plaintiffs' Exhibit 8 attached to opposition, ¶ ¶ 45 and 46.
[87] 2017 WL 3528903 (W.D. La. Mar 8, 2017).
[88] Id. at *9. (The statute is silent as to prescription and the Louisiana Supreme Court has neither adopted a prescription period for LEQA citizens nor otherwise analyzed the issue.)

action and concluded in *dicta* that the LEQA citizen suit claim would be prescribed under the one-year prescription period applicable to torts.[89] The appellate court relied on a law review article authored by Professor K. Murchison which "characterized the suits provision of the Act as arguably creating a new tort."[90]

The Report and Recommendation adopted by the District Judge noted that the parties had not cited, nor had the court found any authority in either the Louisiana Supreme Court, the Louisiana constitution, or the states' statutes to support the principle that the LEQA statute had created a new tort and thus was subject to a one-year prescriptive period.

Cimarex argues that the district court in <u>Salvation Army</u> ignored the express language of LEQA which allows any adversely affected person to file suit under Louisiana Revised Statute 30:2026 to recover actual damages, injunctive relief and attorneys' fees.

The court notes that the statute further provides for civil penalties for each day of the continued noncompliance. There are two elements that must be established: (1) violation of the Environmental Quality Act, plus (2) a causal relationship between the violation and the "actual damages" suffered by the plaintiff. [91] In their Complaint, Plaintiffs are seeking "damages for the evaluation, cleanup, and remediation of contamination" and "restoration of any aquifers damaged by the pollution."[92] In their prayer, Plaintiffs seek compensatory damages, punitive damages, costs to restore the property, damages for diminution in property value, funds to conduct an environmental assessment of the

---

[89] Morris & Dickson Co., Inc. v. Jones Brothers Co. Inc., 691 So.2d 882, 895 (La.App.2d Cir. 1997).
[90] Enforcing Environmental Standards Under State Law: The Louisiana Environmental Quality Act," 57 La. L.Rev. 497, 555 (1997).
[91]
[92] Complaint, ¶ 125. R. #1.

property, damages for annoyance, discomfort and inconvenience, and injunctive relief for remediation and restoration.[93]

Cimarex suggests that the court follow the Louisiana Supreme Court reasoning in La. Dept. of Transp. & Dev. v. Kansas City Southern Railway Co.,[94] which held that "[l]ike conventional tort cases, environmental law statutory remedies involve claims to recover damages for harm caused by a defendant's acts." Louisiana Civil Code article 3493 states that: "When damage is caused to immovable property, the one year prescription [for tort claims under Louisiana Civil Code article 3492] commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage."

The court agrees with Cimarex that claims brought pursuant to LEQA to recover damages in this lawsuit are akin to a tort based claim and are therefore subject to a one year prescriptive period pursuant to Louisiana Civil Code articles 3492 and 3493.[95] As noted by Cimarex, the Arabie reports dated December 2005 and September 2008 purported to detail the damage to the areas of Plaintiffs' property and attributed that damage to Cimarex's oil and gas operations at the Garth Well. The court finds the Arabie reports to be sufficient to put Plaintiffs on notice of the alleged damages which would mean that Plaintiff's tort-based claims pursuant to LEQA are prescribed.

---

[93] See Complaint, Prayer.
[94] 846 So.2d 734, 741 (La. 05/20/03); see also Giauque v. Clean Harbors Plaquemine, L.L.C., 2004 U.S. dist. LEXIS 29797 (La. M. Dist. 3/25/2004)(the parties did not dispute that the one-year prescriptive period applied to LEQA citizen suit provision).
[95] See also Eagle Pipe & Supply v. Amerada Hess Corp., 79 So.3d 246, 290 (La. 10/25/11)("the prescriptive articles [of the Louisiana Civil Code] reflect a legislative determination which rejects imprescriptible torts."); See also Hogg v. Chevron USA, Inc., 45 So.3d 991, 1002 n. 12 (La. 7/6/10).

*Post-2006 tort claims*

As to Plaintiffs' post-2006 tort claims, Cimarex maintains that the Tree-Piracy claim was never raised in the Allen Parish lawsuit, and the remaining tort claims which were asserted in the Plaintiffs' Second and Third Supplemental and Amending Petitions, filed in 2012 and 2015, had prescribed long before they were asserted in state court.

The Tree Piracy Statute found in Louisiana Revised Statute 3:4278.1 provides in pertinent part, the following:

> A.(1) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
>
> * * *
>
> G. Notwithstanding any other provision of law to the contrary, a civil action pursuant to provisions of this Section shall be subject to a liberative prescriptive period of five years.

Cimarex maintains that Plaintiffs' claims under this statute are prescribed on the face of the complaint due to the five year prescriptive period. The five year prescriptive period was added via Act 226 in 2011.[96] Cimarex argues that even if the amendment was not retroactive in effect, Plaintiffs' claims under the statute would have prescribed no later than August 31, 2016. Cimarex relies on the Plaintiffs' knowledge of the damage to the trees as of July 2005 and 2006. Cimarex informs the court that Plaintiffs did not assert any Tree-Piracy claims in the state court lawsuit.[97] Plaintiffs have not disputed this.

---

[96] See La. R.S. 3:4278.1.
[97] See memorandum in support of motion for summary judgment, p. 4.

Plaintiffs had knowledge of the damage to the trees as of July 2005 and 2006; Plaintiffs were aware of the damage to the trees and blamed Cimarex' July 2004 recompletion of the Garth Well as the purported cause of the dead trees. Plaintiffs' claims under the Tree-Piracy statute filed in this court in January 2017 are clearly prescribed.

*Relation back theory*

As to the post-2006 tort claims, Cimarex informs the court that Plaintiffs asserted these claims in the state court lawsuit in their Second and Third Supplemental and Amending Petitions which were filed in March 2012 and April 2015, respectively. Plaintiffs had knowledge of the damage as early as 2006 and as late as 2008 which would indicate that these claims prescribed long before they were alleged in the state lawsuit. Plaintiffs were put on notice of the tort claims from the September 25, 2008, Arabie report and from Jesse Ardoin's deposition taken on October 18, 2007.[98] Plaintiffs asserted these claims in the state lawsuit in March 2012 (second supplemental and amending petition)[99] and April 1, 2015 (third supplemental and amending petition).[100]

Plaintiffs argue that the second and third petitions filed in the state lawsuit relate back to the original petition filed in 2006 and therefore are not prescribed. Cimarex maintains that because the claims asserted in 2012 and 2015 were supplemental and not amending, relation back under Code of Civil Procedure article 1153 does not apply to save these claims.[101] In TCC Contractors v. Hosp. Serv. Dist. No.3, 53 So.3d 1103, 1113 (La.App. 1st Cir. 12/8/10), the court stated that

---

[98] Cimarex' exhibits 25 and 17.
[99] Cimarex exhibit A-3.
[100] Cimarex exhibit A-4.
[101] Boone v. Phillips Co., 139 So.3d 1047, 1061 (La.App. 3d Cir. 5/7/14),

> A supplemental petition may therefore be used to add a new cause of action related factually to a previously existing cause of action, even though the new claim does not, properly speaking, arise out of the original cause of action. The new supplemental cause of action, however, does not relate back in time to the date of the original petition; prescription of the new cause of action would generally be held to be interrupted as of the date of filing of the supplemental petition.

Cimarex argues that Plaintiffs' second and third supplemental and amending petitions are clearly "supplemental" and therefore do not relate back to the June 1, 2006, originally filed petition. The original petition sought damages against defendants, Cimarex, Moncla, H&P and Kash. The petition alleged that in conjunction with the recompletion, Moncla, the agent for H&P and Kash,[102] spilled completion chemicals in an area about 100 yards from the Garth Well caused by an overturned tank/vacuum truck. The spilled completion fluids allegedly caused the trees to die in an area about 100 yards from the Garth Well (the Dead Tree Area).

The supplemental petition must assert a new cause of action that is susceptible of being sued upon or which arose after the filing of the original petition.[103] Cimarex maintains that the claims asserted in the supplemental petitions as to the Garth Well area spills, the former Garth Well reserve pit, and the April 29, 2002 purported spill were not plainly "exigible" as of the filing of the Original Petition in June 2006. Cimarex argues that Plaintiffs had no knowledge until October 2007, with regards to the April 29, 2002 purported spill; Plaintiffs became aware of the Garth Well area spills on or about October 18, 2007, at the deposition of Plaintiffs' neighbor, Jesse Ardoin; Plaintiffs became aware

---

[102] Kash was a joint venturer/working interest partner in the Garth Well and original lessor of the H&P oil lease. See Cimarex exhibit A-1, original complaint, ¶ 11. R. #25-3.
[103] Maraist, 1 La. Civ. L. Treatise, Civil Procedure, § 6.10, 9. 200 (Thomson-Reuters, 2d ed. 2008).

of the alleged contamination at the former Garth Well reserve pit site on September 25, 2008. Cimarex also asserts that the supplemental petitions are not factually related to the Plaintiffs' original petition. In other words, the Plaintiffs' causes of action in the second and third petitions have the characteristics of a new lawsuit rather than an amended one.[104]

The second petition relies upon the September 25, 2008 report which alleges widespread contamination across the surface of the property at the Garth Well due to failure to perform use and maintenance of Plaintiffs' property in a manner consistent with prudent industry practices.[105] The third petition asserts that the Garth Well reserve pit was not constructed properly, causing damage, and that the closure of the Garth Well reserve pit was not performed properly. This petition also complains of the defendants' failure to timely pump out the product storage tank at the Garth Well, causing overfill and spillage on the ground.[106]

The court agrees with Cimarex that Plaintiffs' tort claims as to the Garth Well former reserve pit, the April 29, 2002 purported spill and the Garth Well area spill are new claims and thus are clearly supplemental in nature. Thus, these claims do not relate back to the original petition.

*Did prescription run anew from the date of dismissal?*

---

[104] <u>Taylor v. Babin</u>, 13 So.3d 633, 644 (La.App. 1st Cir. 5/8/09).
[105] Cimarex exhibit A-3.
[106] Cimarex A-4.

Plaintiffs maintain that Louisiana law allows prescription to begin to run anew from the date of dismissal without prejudice of the state court lawsuit on January 25, 2017,[107] since the dismissal interrupts prescription.[108]

Plaintiffs rely on Louisiana Civil Code article 3462 which provides as follows:

> Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.

Plaintiffs further rely on Louisiana Civil Code article 3463 which provides as follows:

> An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending. Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at the trial.

In the state court suit, Plaintiffs' Motion for the Entry of a Proposed Judgment on Defendants' Motion to Dismiss and Re-urged Exceptions was denied; the court signed a related "judgment/opinion" on January 25, 2017,[109] and involuntarily dismissed Plaintiffs' suit without prejudice; Plaintiffs filed the instant suit on January 10, 2018.Thus, Plaintiffs

---

[107] Plaintiffs' exhibit A (notice of signing of judgment/opinion).
[108] See La. C.C. art. 3462 (and Comment (b)); La. C.C. art. 3463 (and Comments (b) and (f)); La. C.C. art. 3466; see also Gonzalez v. Seal, 677 Fed. Appx. 918, 922-23 (5th Cir. 2017); McKnight v. Canulette, 1999 WL 642844 at *1 (5th Cir. 1999); Hebert v. Cournoyer Oldsmobile-Cadillac-GMC, Inc., 405 So.2d 359, 360-61 (La.Ct.App.1981), writ granted sub nom. Hebert v. Cournoyer Oldsmobile-Cadillac-GMC, Inc., 410 So.2d 1129 (La. 1982), writ granted, 410 So.2d (La.1982) aff'd sub nom. Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982).
[109] Plaintiff's exhibit A.

argue that the Post-2006 tort claims in the instant suit are not prescribed because they run anew from the date of dismissal.[110]

This court fails to understand how Plaintiffs' post-2006 tort claims that were clearly prescribed when filed in state court could somehow be resurrected via the January 25 2017 Judgment. The January 25, 2017 Judgment rendered pursuant to "Plaintiffs' *Motion for the Entry of a Proposed Judgment on Defendants' Motion to Dismiss and re-urged Exceptions"*[111] was denied at Plaintiffs' cost. According to Cimarex, Plaintiffs' motion was an attempt to substantively modify, or amend the state court's December 15, 2016 Judgment on a Motion to Dismiss and Re-Urged Exceptions.

The December 15, 2016 Judgment dismissed without prejudice[112] Plaintiff's Fourth Amending and Supplemental Petition as untimely under the extended deadline for filing curative amendments; Plaintiffs fax-filed this petition but the court dismissed it because Plaintiffs failed to prove that they complied with Louisiana Revised Statute 13:850.B.[113]

The state court had previously dismissed without prejudice, Plaintiff's Second and Third Amending Petitions in a January 30, 2015 and May 2, 2016 Judgment On Exceptions due to failure to cure the problems as to vagueness, ambiguity and non-compliance previously communicated to Plaintiffs.[114] As noted by Cimarex, Plaintiffs' claims under the CWA, LEQA and Tree Piracy statute were not dismissed, because they

---

[110] Citing LeBreton v. Rabito, 714 So.2d 1226, 1229 (La. 7/8/98).
[111] Id.
[112] Under Louisiana Revised Statute 13:850.C., the Fourth Petition was dismissed as having "no force or effect." The court stated that "the plaintiffs have not carried their burden of proving that the documents that was fax-filed was forwaded to the Court within the five legal days as required by Louisiana Revised Statute 13:850(B). Accordingly, the court finds that it was not timely filed, and the court will find that it legally was not filed." Cimarex exhibit A-11, p. 18.
[113] Fax-filings must be followed up by filing the original document within 5 days.
[114] Cimarex exhibit A-11, p. 18.

were never properly brought in the state court lawsuit. The post-2006 tort claims were already prescribed as analyzed herein above. Accordingly, Plaintiffs' arguments that the prescriptive period ran anew with the January 25, 2017 Judgment lacks merit.

*Collateral Estoppel*

Cimarex maintains that any claim for damages to the Dead Tree Area caused by the alleged spill of completion fluids during the July 2004 recompletion of the Garth Well is barred by estoppel. In their original complaint, Plaintiffs asserted that the operators of the Garth Well, including Cimarex, were responsible for the damage to a 1.8 acre Dead Tree Area caused by an overturned vacuum truck.[115] Plaintiffs initially named Defendant, Moncla Well Service, the drilling contractor hired for the recompletion project. Plaintiffs dismissed Moncla without prejudice from the state court lawsuit. In January 2010 after dismissing Moncla, Plaintiffs named Calcasieu Rentals, Inc. ("CRI") as the alleged offender; CRI was the only entity supplying salt water disposal and vacuum trucks for the Garth Well recompletion.[116] Subsequently, CRI filed a motion for summary judgment asserting that there was no genuine issue of fact that none of its trucks spilled anything during the course of the work.[117] Plaintiffs opposed the motion and after a hearing on January 30, 2012, the Allen Parish state court granted CRI's motion dismissing CRI; Plaintiffs did not appeal the Judgment.

In the instant lawsuit, Plaintiffs allege that during the July 2004 recompletion of the Garth Well, a vacuum truck overturned and spilled saltwater on Plaintiffs' property,

---

[115] See Complaint, ¶ ¶ 1 and 46. R. #1.
[116] Cimarex exhibits A-2 and A-10.
[117] Cimarex exhibits A-5 and A-6.

causing the trees to die. Plaintiffs then allege that Cimarex is legally responsible for the overturned vacuum truck.

Cimarex seeks to dismiss this claim based on *res judicata* and relies on Louisiana Revised Statute 13:4231(3) which provides the doctrine of collateral estoppel or issue preclusion as follows:

> A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The <u>Restatement (Second) of Judgments</u>,[118] provides as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.

Under Louisiana Revised Statute 13:4231, *res judicata* bars relitigation of a subject matter arising from the same transaction or occurrence as a previous suit. The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action.[119] The doctrine of *res judicata* is not discretionary and mandates the effect to be given final judgments.[120]

Louisiana Revised Statute 13:4231 embraces both claim preclusion (*res judicata)* and issue preclusion (*res judicata*).[121] Under claim preclusion, the *res judicata* effect of a

---

[118] Vol. 1, § 27, p. 250 (1982).
[119] <u>Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.,</u> 666 So.2d 624, 632 (La. 1/16/96).
[120] <u>Leon v. Moore</u>, 731 So.2d 502, 505 <u>writ denied,</u> 747 So.2d 20 (La.7/2/99).
[121] <u>Mandalay Oil & Gas</u>, 880 so.2d at 135.

final judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties.[122]

Plaintiffs maintain that the January 30, 2012 Judgment was not final, and if it was the four elements of collateral estoppel are not met. Plaintiffs remark that the January 30, 2012 ruling was in favor of CRI, not Cimarex—a different party. In that ruling, the court held that "there is an absence of factual support connecting **CRI** with the alleged contamination."[123]

Plaintiffs assert that the ruling was not a "final judgment" within the meaning of Louisiana Revised Statute § 13:4231.[124] Plaintiffs argue that because the Judgment does not indicate that it is final, and is silent as to whether it was dismissed with or without prejudice, then it must have been without prejudice. Louisiana Civil Code article 1673 provides that a dismissal without prejudice does not constitute a bar to another suit on the same cause of action. Plaintiffs assert that where a court does not indicate if a dismissal is with or without prejudice, it is deemed without prejudice and *res judicata* does not apply.[125] Plaintiffs then assert that because the Judgment was without prejudice, it

---

[122] Id. at 136.
[123] Plaintiffs' exhibit 12, Judgment (emphasis added).
[124] Federal jurisprudence may be consulted for guidance in interpreting Louisiana's *res judicata* principals and the Restatement of Judgments. See Lafreniere Park Foundation v. Broussard, 221 F.3d 804, 808 (5th Cir. 2000).
[125] State Through Dept. of Public Safety and Corrections v. Louisiana Riverboat Gaming Com'n, 640 so.2d 1368, writ granted, 644 So.2d 1063 writ granted, 644 So.2d 1064 (La. 11/4/94), writ granted, 644 So.2d 1064 (La.11/4/94), reversed in part, vacated in part, 655 So.2d 292 (La. 5/22/95).

was not final, and the fact that Plaintiffs did not appeal is meaningless, because an appeal would have been premature.

Cimarex relies on Louisiana Code of Civil procedure 1841 which provides that "[a] judgment that determines the merits in whole or in part is a final judgment." CRI's motion for summary judgment[126] sought dismissal of Plaintiffs' claims against it with prejudice after determining the merits of the Plaintiffs' claims. Thus, Cimarex maintains that the January 20, 2012 Judgment is clearly a final judgment triggering issue preclusion under Louisiana Revised Statute 13:4331(3).

The court has reviewed CRI's motion for summary judgment in the state court lawsuit, and it expressly seeks dismissal with prejudice at Plaintiffs' costs. The Judgment grants the motion at Plaintiffs' costs. The court has also reviewed the memorandum in support of the motion and the opposition to the motion. The memorandum argued that there was an absence of evidence to support Plaintiffs' theory of liability against CRI, and there was no evidence presented to establish that the alleged overturned truck actually leaked any completion fluids. Plaintiffs opposed the motion and argued that there was a genuine issue of material fact because CRI was the only trucking company hired by Cimarex to haul water and completion fluids to the Garth Well during the relevant time period. There were other wells in the area being serviced, but there were no reports of a spill or an overturned truck.

Plaintiff, David Daigle, first noticed the dead pine trees sometime after July 1, 2005. A site inspection revealed deep ruts along the road and adjacent to the affected area.

---

[126] Cimarex exhibit A-5.

Lab results revealed that the area was impacted environmentally. Even though the judgment did not state with prejudice, the parties' memoranda indicate that the state court clearly ruled on the merits based on the parties' arguments which is buttressed by the fact that the motion for summary judgment expressly requested dismissal with prejudice and said request was granted. Thus, we find that the January 2012 Judgment was final and collateral estoppel or *res judicata* would apply.

Next, Plaintiffs maintain that Cimarex has failed to meet the elements necessary for collateral estoppel or *res judicata* to apply. Louisiana courts require four elements to be met before a prior judgment will bar relitigation of an issue of fact or law: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment.[127]

The court must determine if there was an identity of interests between Cimarex and CRI sufficient to treat them as identical parties. Cimarex points out that the Plaintiffs' claims in this lawsuit against Cimarex regarding the phantom overturned vacuum truck and the Dead Tree Area are identical to the claims asserted against Cimarex (and CRI) in the state court lawsuit.

Plaintiffs argue that there is no privity as to Cimarex and the aforementioned Judgment. Louisiana courts have established privity as follows: (1) where the nonparty is the successor in interest of a party; (2) where the nonparty controlled the prior litigation; or (3) where the nonparty's interests were adequately represented by a party to the action

---

[127] Sevin v Par. of Jefferson, 632 F.Supp.2d 586, 594-95 (E.D. La. 2008), quoting In re Keating, 397 F.3d 264, 270-71 (5th Cir. 2005).

who may be considered the 'virtual representative' of the nonparty because the interest of the party and the nonparty are so closely aligned.[128] Virtual representation is "narrowly construed" and is not satisfied by a showing that "the party and the nonparty have common or parallel interests in the factual and legal issue presented in the respective actions."[129]

Plaintiffs assert that "Cimarex did not acquire any interest 'after' the prior litigation's commencement, so it is not a 'privy'" and it did not acquire an interest through "inheritance, succession, purchase, or assignment."[130] Thus, Plaintiffs maintain that because Cimarex is not a "privy", *res judicata* does not apply. Plaintiffs also argue that even the agency relationship between Cimarex and CRI does not satisfy the elements of "privy."

Cimarex asserts that the parties are the same and CRI, as owner/operator of the offending vacuum truck, is alleged to have been H&P's (Cimarex' predecessor by merger) agent making CRI the privy and virtual representative of Cimarex for preclusion purposes.[131]

Cimarex, who was also a Defendant in the state court lawsuit, maintains that because of its relationship with CRI—H&P[132] hired CRI for the Garth Well recompletion

---

[128] Alphonse v. Arch Bay Holdings, L.L.C., 548 F.App'x 979, 983 (5th Cir. 2013)(citing United Gen. Title Ins. Co. v. Casey Title, Ltd., 800 So.2d 1061, 1067).
[129] Id.
[130] Plaintiffs' opposition brief, p. 27, R. #28.; see also Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc., 2010 WL 3719608, at *2 (M.D. La. Sept. 15, 2010), vacated, 756 F.3d 327 327 (5th Cir. 2014)(citing Five N Co.,LLC v. Stewart, 850 So.2d 51, 61 (La.App. 1st Cir. 2003)).
[131] Citing Mandalay Oil & Gas, L.L.C. v. Energy Dev. Co., 880 So.2d 129, 142 (La.App. 1 Cir. 8/4/04) writ denied, 893 So.2d 72 (La. 1/28/05)(the preclusive effect of a judgment binds "privies" of the parties to an action where the alleged nonparty's interests were adequately represented by a party to the action who may be considered the virtual representative because of a close alignment of interests.)
[132] H&P initially operated the Garth Well until its merger with Cimarex. The original petition named Moncla as the company hired to provide vacuum truck services. After discovery, it was determined that Moncla

33

project—CRI has privity as to the Judgment which dismissed CRI and was the virtual representative of Cimarex and therefore *res judicata* applies as to the issue decided by the state court with regards to the alleged spill in July 2004 by the overturned vacuum truck. The state court lawsuit alleged that Cimarex and CRI, as the agent, were liable *in solido,* due to the overturned vacuum truck. The court finds that there is privity here as CRI was the virtual representative of Cimarex because their interests were closely aligned in opposition to Plaintiffs' claims.

Next, we must determine if the issues involved in the state court action are identical to the issues in this action. In their first supplemental and amending complaint, Plaintiffs added CRI as a defendant to replace Moncla. Plaintiffs also amended the complaint by making CRI joint and/or solidary obligor with the other named Defendants, one of which was Cimarex. The issue resolved by the state court ruling and judgment involved the overturned truck which allegedly spilled completion fluids causing damage to the Dead Tree Area. The court concluded that there was an absence of evidence as to the owner/operator of the truck and whether or not there was an actual spill. This issue was litigated and the judgment was not appealed. The court finds that Cimarex has satisfied both elements (the issues are identical and were actually litigated)[133] of *res judicata* or issue preclusion.

With respect to the last element, the court must decide if the determination of the issue in the prior action was necessary to the resulting judgment. Issue preclusion

---

was not the company hired. CRI was added as a defendant in the First Amending and Supplemental petition.

[133] Comment (d) to § 27, Restatement (Second) of Judgments, p. 255 (An issue is considered to have been actually litigated when it was submitted and determined within the context of a motion for summary judgment.)

requires the issue to be precluded to have been a dispositive issue which the court must have considered in a contest between the same parties.[134] The state court dismissed the claims asserted against CRI because there was an absence of factual support—the Plaintiffs had no evidence that the overturned truck was owned and/or operated by CRI, and there was not one scintilla of evidence that there was a leak from the overturned truck.

Plaintiffs assert that there is additional evidence not considered in the 2012 CRI Judgment that would link Cimarex to the Dead Tree Area contamination. While this may be so, our analysis as to issue preclusion is restricted to any contamination caused by the alleged phantom truck which overturned during the July 2004 recompletion of the Garth Well. This was the only issue raised and decided in the state court 2012 Judgment which dismissed CRI. To that end, the court finds that with regards to Plaintiffs' claims of liability against Cimarex and/or CRI for the overturned vacuum truck in July 2004, that issue was litigated and decided and will not be relitigated in this lawsuit.

*Continuing tort*

In Louisiana, to have a continuing tort, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." [135] In cases where plaintiffs seek damages for the deposit or disposal of contamination or oilfield waste on or in their

---

[134] Goodman v. Spillers, 686 So.2d 160, 167 (La.App. 2d Cir. 1996).
[135] Marin v. Exxon Mobil Corp., 48 So.3d 234, 253 (La. 10/19/10), quoting Hogg v. Chevron USA, Inc., 45 So.3d 991, 1003 (La. 7/6/10).

property via unlined pits, the operating cause of the plaintiffs' injury is the actual disposal or storage of the oilfield waste in the pits—not the failure to remove it.[136]

Plaintiffs' rely on photos and sampling reports, however, these photos and sampling reports only show the alleged injury but does not indicate that Cimarex has control and/or is the operating cause of Plaintiffs' injury. Because there is no evidence to establish that Cimarex has any operational control of the alleged continuing leaks or spillage, Plaintiffs' assertion that Cimarex is committing a continuing tort is without merit.

*Stipulation pour autrui under the Garth Lease*

Cimarex maintains that Plaintiffs, as a matter of law, are not third party beneficiaries for restoration claims under the Garth Lease. Cimarex remarks that (1) the Garth Lease did not contain a provision for restoration of the Plaintiffs' property, and (2) Plaintiffs did not receive any assignment of rights pursuant to the January 9, 2015 Assignment of Rights between T.L. Garth and Plaintiffs.

Plaintiffs suggest that Cimarex analyzed the wrong lease language and argues that (1) there is a *stipulation pour autrui* in Clause 9 of the Lease, (2) there is a *stipulation pour autrui* under Andrepont v. Acadia Drilling Co.,[137] and (3) Plaintiff did receive an Assignment of Rights. Plaintiffs argue that the cases cited by Cimarex are distinguishable and there is a *stipulation pour autrui* under the factors set forth in Andrepont.

---

[136] See Lejeune Bros., Inc. v. Goodrich Pet. Co. LLC, 981 So.2d 23, writ denied, 978 So.2d 327 (La.4/4/08); Mouton v. State of La., 525 So.2d 1112 (La. 1988)(both holding that the operating cause of plaintiffs' injury was the disposal or storage of oilfield waste in plaintiffs' property even though the damage caused by the conduct was continuous).
[137] 255 La. 347, 357, 321 So.2d 347, 350 (La. 1969) ("Stipulations in favor of third persons (stipulation pour autrui) are favored in our law").

A *stipulation pour autrui* exists when some advantage to a third party is created as a condition to, or consideration of, a contract.[138] Such stipulation is never presumed; rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made "manifestly clear."[139]

Cimarex relies on ¶ 8 of the Lease which provides as follows:

> The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations.[140]

Plaintiffs rely on Clause 9 of the Lease which provides as follows:

> All provisions hereof shall inure to the benefit of and bind the successors and assigns (in whole or in part) of Lessor and Lessee, (whether by sale, inheritance, assignment, sub-lease or otherwise).

Plaintiffs then remark that there is both an assignment and a sale because Plaintiffs bought the property from the Lessor, T.L. Garth, making Plaintiffs a successor by sale. Plaintiffs maintain that the lease expressly creates a *stipulation pour autrui* for "successors" "by sale." The Louisiana Supreme Court has declared the following factors to consider when analyzing a potential *stipulation pour autrui*:

> (1)The existence of a legal relationship between the promise and the third person involving an obligation owed by the promise to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promise and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promise to the beneficiary against which performance of the promise [sic] will protect the former; (b)

---

[138] Louisiana Civil Code article 1871.
[139] Paul v. La. St. Employees Group Ben. Prog., 762 So.2d 136 (La. App. 1 Cir. 5/12/00).
[140] Lease, Exhibit 4, ¶ 8 attached to Complaint. R. #1-5.

securing an advantage for the third person may beneficially affect the promise in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.[141]

Cimarex argues that neither the Garth Lease, nor the Assignments of Rights purport to assign to Plaintiffs any rights with respect to Plaintiffs' property. A *stipulation pour* autrui exists when some advantage to a third person is created as a condition or consideration of a communative contract.[142]

First, Cimarex argues that the damages limitation in the Garth Lease actually negated third party beneficiary status for a mere surface owner. In Broussard v. Northcott Expl.,[143] the court distinguished the results in Andrepont based on the intent of the parties to the lease at the time of negotiations of the mineral and the lease provisions. In Andrepont, supra, the standard clause ("to timber and growing crops of Lessor") was modified to read "for all surface damages. Hence, the court determined that this broader language was an intent to benefit a third party and created a *stipulation pour autrui.*

In Broussard, the standard damage clause found in the original version of the mineral lease ("The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations") was modified to read "for all surface damages." However, the mineral lease was not modified to expand Defendant's liability beyond the "damages of the lessor." Consequently, the Louisiana Supreme Court found

---

[141] Andreponte, 231 So. at 358.
[142] LSA—C.C. 1978. "A contracting party may stipulate a benefit for a third person called a third party beneficiary."
[143] 481 So.2d 125, 127 (La.1986); See also Frank C. Minvielle v. IMC Global Operations, 380 F.Supp.2d 755, 769 (W.D. La. 2004)("The only provision which discusses a right to damages is limited to damages payable to "lessor and Lessor's tenant's." Under Louisiana case law, such language does not create a stipulation pour atrui in favor of plaintiff."

that there was no *stipulation pour autrui* because the express language of the mineral lease restricted damages to that of the Lessor inferring no benefit on a third party.

In the Garth Lease, we find that same restrictive language – "for all damages to timber and growing crops *of Lessor.*" Thus, we can only conclude that at the time the mineral lease was created, the parties had no intention of bestowing a benefit to a third party, namely, Plaintiffs.

As their saving grace, Plaintiffs executed an Assignment of Rights in January 2015 wherein Mr. Garth purported to convey to Plaintiffs all of his "property damage rights and causes of action for and related to environmental damage to and pollution of [plaintiffs' property] against [Cimarex] occurring under or as a result of exploration and production related operations conducted pursuant to [the Garth Lease]". Cimarex notes that the Garth Lease expired in 2009 due to cessation of production for over ninety days; the Assignment of Rights was executed in January 2015. Cimarex cites several cases wherein the courts held that "it [i]s impossible to transfer rights to an assignee under an expired mineral lease."[144] Thus, Cimarex maintains that because the Garth Lease expired due to non-use, the 2015 Assignment of Rights is legally insufficient to effect the assignment of any of the former-lessor's claims or rights under the expired Garth Lease.

---

[144] Lejeune Bros. v. Goodrich Petroleum Co., 981 So.2d 23, 28 (La.App. 3 Cir. 11/28/07); see also Broussard v. Dow Chemical Co., 2012 U.S.Dist. LEXIS 171994 at *22 (U.S.D.C. – W.D. La. Dec. 2, 2012), affirmed, 550 Fed. Appx. 241 (5th Cir. 2013)(holding that under Lejeune the prior landowners could not have assigned any rights to plaintiff-surface owners under an expired mineral lease: "Just as in Lejeune, in which the court found that the prior landowner could not have transferred their rights (including the right to sue) to an assignee under an expired lease, here, it is clear that [the prior landowner] could not have assigned any right to sue Dow for damages to the [current surface owners] under a mineral lease that expired over twenty years prior to the [current surface owners] buying the land.") Boone v. Conoco Phillips Co., 139 So.3d 1047, 1060 (La.App. 3d Cir. 5/7/14); see also Global Marketing Solutions, LLC v. Blue Mill Farms, Inc., 153 So.3d 2109, writ denied, (La. App. 1 Cir. 9/19/14).

In Lejeune, the Third Circuit Court of Appeal held that because a mineral lease had expired two (2) years prior to the Plaintiffs' acquisition of the subject property, the prior lessor was not a mineral lessor and could not assign any rights under the expired lease in a sale. Hence, the court concluded that there could not be a *stipulation pour autrui* because the lease clearly only provided rights under the lease to the Lessor; in this instance, this would be Mr. Garth.

In Global Marketing Solution, LLC v. Blue Mill Farms, Inc.,[145] the plaintiff-surface owner obtained assignments of rights and claims from certain mineral servitude owners against former mineral lessees which were executed after the mineral leases expired. The court found that the purported assignments were ineffective because they were obtained after the mineral leases had expired. We find no difference here. The assignment relied upon by Plaintiffs was executed after the Garth mineral lease had expired. Accordingly, Plaintiffs cannot rely upon the assignments, nor the sale which allegedly transferred Plaintiffs' rights as assignees because the Garth mineral lease had expired.

*2002 Contract of Release*

Cimarex maintains that Plaintiffs' claims to restore the Garth Well pad under the 2002 Contract of Release[146] ("2002 Release") is premature because the Garth Well has not been plugged and abandoned. Cimarex maintains that Defendant, Drive Energy is currently operating the Garth Well and has operated the Well since May 1, 2015.

---

[145] 153 So.3d 2109, writ denied, (La. 4/23/15).
[146] Contract of Release, R. #1-21, referred to by Plaintiffs as the 2002 Surface Use Agreement.

Plaintiffs maintain that there are other obligations under the 2002 Release for which Cimarex would be responsible as a prior operator. Plaintiffs refer the court to ¶ 155, of their Second Amended Complaint.[147] The amended complaint alleges a breach of standards imposed by Louisiana Civil Code articles 1994, 2683, 2686, 2687, 2688 and 2692 created by the 2002 Contract of Release/Surface Agreement. The amended complaint alleges that Cimarex (and H&P) have a duty to repair any damage caused by their conduct and they are "liable for the failure to perform this obligation to repair and restore the [Plaintiffs'] property."[148]

As noted by Cimarex, the 2002 Release released Cimarex from surface damages pertaining to the Garth Well in exchange for $10,000. The 2002 Release between Plaintiffs and H&P expressly released H&P and the co-owners, as well as their employees, agents, contractors and sub-contractors for all liability for surface damage to the lands within the existing well pads, access road, crops and appurtenance in connection with the parties' drilling operations and maintenance of oil and gas production that was associated with the drilling, completion, production and maintenance of the Kingrey Estate no. 1 and the T.L. Garth No. 1 wells.[149] The 2002 Release also provides that:

> When the well is plugged and abandoned, lease road and gravel pad will be restored, within six months, as near as possible to the original condition. Upon Closure, soil parameters will meet L.D.N.R. 29-B criteria and/or criteria provided by Governmental bodies having jurisdiction over the covered lands or operations

---

[147] R. #12.
[148] Id.
[149] R. #1-21.

Plaintiffs assert that the 2002 Release expressly created contractual duties. Specifically that trash be "hauled off and not buried on location,"[150] that "[a]ll spill will be cleaned up and remediated immediately and to a reasonably practicable level,"[151] and that "[a]ny offsite impacts . . . to the property that occur outside the well pad or access road areas will be reported to the landowner immediately and any resulting damages will be the responsibility of Helmerich & Payne, Inc. or successors or assigns."[152] Plaintiffs maintain that these duties are independent of Cimarex's duties to restore the property after the well has been plugged and abandoned. Plaintiffs then assert that Cimarex has breached all of these duties.

Cimarex counters Plaintiffs' arguments and argues that a "novation" occurred which would in effect extinguish Cimarex' obligations under the 2002 Release. Cimarex relies on a 2010 agreement between Plaintiffs and Double Eagle Resources, LLC and refers the court to ¶ 68 of the Complaint which provides that

> In May 2010, prior to restoring production for the Garth Well, Double Eagle Resources LLC secured a new road use agreement (Exhibit 37, the "**2010 Road Use Agreement**") and a new surface use agreement (Exhibit 38, the "**2010 Surface Use Agreement and Pipeline Right-of-Way**") with the [Plaintiffs] in conjunction with its new Garth Well and Kingrey Estates Well operations. Accordingly the Garth Lease, and the 2002 surface use agreement for the Garth Well and associated roads expired of their own terms and remain no longer in force or effect by their own terms by abandonments, and were superseded by/replaced with the new contract with Midnight Drilling/Double Eagle Resources, LLC.[153]

---

[150] Id. ¶ 1.
[151] Id. ¶ 7.
[152] Id. ¶ 8.
[153] R. #12, Second Amended Complaint.

The 2010 Surface Use Agreement and Pipeline Right-of-Way ("2010 Surface Agreement") obligates the Grantee[154] to pay Plaintiffs for any damage to property of any kind for the violation of any law or regulation, arising in connection with the operations provided for in the 2010 Surface Agreement which expressly included drilling operations.[155]

Louisiana Civil Code article 1881 provides that a "novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed. . . ." meaning that a [n]ovation takes place when a new obligation is substituted for an old one, which is thus extinguished. The basic elements to an obligation are the parties to it, its object and its cause.[156] Cimarex suggests that the 2010 Surface Use Agreement was unquestionably substituted in place of the 2002 Surface Use Agreement, which was extinguished via novation.

Plaintiffs argue that there was no novation because the 2010 Surface Agreement was between Plaintiffs and Double Eagle Resources, LLC only, not Cimarex, nor did the 2010 Agreement contain any express or implied release of Cimarex' obligations. Plaintiffs remark that when the 2010 Agreement was executed, suit had already been filed against Cimarex as to its restoration obligations.

A novation cannot be presumed; the intent to extinguish the original obligor must be "clear and unequivocal,"[157] and there must be a "clear indication" that extinguishment is intended.[158] The burden of proof for establishing novation is on the person who asserts

---

[154] Double Eagle Resources, LLC.
[155] Exhibit 38 attached to Complaint, R. #1-39,
[156] Revision Comments – 1984 at art. 1881 a (c).
[157] La. Civ. C. art 1880.
[158] La. Civ. C. art. 1884 (comment a).

it.[159] The court finds that Cimarex has failed to prove that the 2010 Agreement was a novation; the parties are different, and the 2010 Agreement does not clearly indicate that it extinguished any prior obligations under the 2002 Agreement. The court finds that the 2010 Agreement is not a novation.

However, as noted by Cimarex, the Garth Well is currently being operated by Drive Energy, so it is clear that because the Garth Well is not plugged and abandoned, Plaintiffs' claims to restore the lease road, gravel pad and soil parameters pursuant to the 2002 Agreement are premature.

*Tree Piracy*

In addition to dismissing the Tree Piracy claims due to prescription, Cimarex moves to dismiss these claims substantively, because the Tree Piracy Statute does not apply to unintentional, or negligent damage to another's trees. Louisiana Revised Statute 3:4278.1 makes it unlawful to "cut, fell, destroy, remove, or to divert for sale or use, any trees," or to direct one's agent or employee to "cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another" without the owner or legal possessor's consent. Section B of the statute establishes punitive damages for willful and intentional violations of the statute. Section C makes "good faith" violators of the statute liable for punitive damages.

---

[159] Ciolino v. First Guar. Bank, 133 So.3d 686 (La.App. 1 Cir. 2013).

Cimarex relies on Sullivan v. Wallace,[160] wherein the Louisiana Supreme Court noted that the legislative intent in enacting the statute was to protect owners from illegal timber harvesting by loggers.

Plaintiffs maintain that the Tree Piracy statute applies beyond the context of illegal timber harvesting. Plaintiffs cite Mathews v. Steib,[161] which expanded the scope of the statute to include any tree, not just merchantable trees because the legislature made no distinction between merchantable and non-merchantable trees. Thus, Plaintiffs argue that the case law shows that the statute applies beyond the illegal timber harvesting context.[162] Plaintiffs argue that both §§ B and C apply to the Dead Tree Areas noting that the destruction of trees by a "good faith" violator occurs when the violator "should have been aware that his actions were without consent or direction of the owner."[163]

Plaintiffs assert that Cimarex willfully, intentionally, illegally and improperly closed the pit and thus its actions were not accidental. Even if Cimarex was operating in "good faith" under the statute, Plaintiffs allege that Cimarex' actions destroyed the trees without the consent or direction of the owner of the trees. The court agrees that the Tree Piracy Statute would be applicable to Plaintiffs' claims of destruction of the trees in the Dead Tree Area. However, as previously noted, those claims are prescribed.

---

[160] 51 So.3d 702 (La. 11/30/10).
[161] 82 So.3d 483, 486-87 (La. App. 1 Cir. 12/15/11), writ denied, 85 So.3d 90 (La. 3/23/12).
[162] See e.g. Corley v. Gary, (La.App. 1 Cir. 5/2/14); Isdale v. Carman, 692 So.2d 687 (La.App. 3 Cir. 04/02/97); Davis v. Culpepper, 794 So.2d 68 (La.App. 2 Cir. 7/11/01), writ denied 804 So.2d 646 (La. 12/14/01).
[163] La. R. S. 3:4278.1(C).

*Recovery of civil fruits*

Not to leave any stone unturned, Cimarex moves to dismiss Plaintiffs' claims of unjust enrichment/civil fruits for the "unauthorized use of the [Plaintiffs'] Property to store and dispose of toxic waste and contamination making Cimarex liable for the civil fruits derived from Defendants' trespass pursuant to Louisiana Civil Code article 486. Fortunately, for this court, Plaintiffs ungrudgingly concede that the civil fruits claim was previously dismissed in the state court lawsuit and hence, do not oppose dismissal of the civil fruits claim in this court.[164]

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted to the extent that this court lacks jurisdiction over Plaintiffs' claims under the Clean Water Act; the motion for summary judgment will be granted to the extent that the court finds that Plaintiffs' Complaint fails to state a claim upon which relief can be granted against Defendant, Cimarex, under the Clean Water Act as the court finds that the Act is not applicable to Defendant, Cimarex, due to termination of the lease and there being no reasonable likelihood that Cimarex will continue to pollute in the future; the motion for summary judgment will be granted dismissing as prescribed, Plaintiffs' claims under the Clean Water Act, the Louisiana Environmental Quality Act, the Louisiana Tree Piracy Statute, and the tort claims asserted by Plaintiff subsequent to 2006; the motion for summary judgment will be granted as to Plaintiffs' claim for damage caused by the overturned vacuum truck during the July 2004 recompletion of the Garth Well as barred

---

[164] Plaintiffs' Opposition to Cimarex's Supplemental Memorandum in Support of Motion for Summary Judgment and Cimarex's Reply Brief for Motion to Dismiss, R. #28, p. 15.

by collateral estoppel; the motion for summary judgment will be granted as to Plaintiffs' claims for an alleged violation of the Garth Lease as the court finds that there is no *stipulation pour autrui* in favor of Plaintiffs and the January 2015 Assignment of Rights was ineffective to transfer rights to Plaintiffs; the motion for summary judgment will be granted as to Plaintiffs' claims for restoration pursuant to the 2002 Contract of Release as the court finds that this claim is premature; the motion for summary judgment will be granted as to Plaintiffs' claims for unjust enrichment and/or civil fruits; the motion for summary judgment will be denied as to Cimarex' assertion of a novation by the 2010 Surface Use Agreement and Pipeline Right-of-Way as the court finds that Cimarex failed to meet its burden of proof that a novation occurred; the motion for summary judgment will be denied as to Cimarex' assertion that the Tree Piracy Statute does not apply.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 28th day of June, 2018.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE